# EXHIBIT B

FROM : DEERFIELD DEV GROUP         FAX NO. :6782904824         Jan. 29 2008 03:47PM  P2/8
Feb 28 07 12:54p    Joe DeMarco                                  678-935-1354              p.1




# COMMERCIAL PURCHASE AND SALE AGREEMENT

Offer Date: February 27, 20 07

2007 Printing

1. **Purchase and Sale.** The undersigned buyer ("Buyer") agrees to buy and the undersigned seller ("Seller") agrees to sell all that tract or parcel of land, with such improvements as are located thereon, described as follows: All that tract generally known as **15 Oxbo Rd**, **ROSWELL** **30075**, together with all fixtures, landscaping, improvements, and appurtenances, all being hereinafter collectively referred to as "Property." The full legal description of Property is the same as more particularly described in Exhibit "A" or if no Exhibit "A" is attached, then as described in Deed Book _____, Page _____ of Plat Book **7422**, Page **34**, with the Clerk of the Superior Court of **Fulton** County, Georgia and is made a part of this Agreement by reference.

2. **Purchase Price.** Buyer warrants that Buyer will have sufficient cash at closing, which when combined with the loan(s), if any, referenced herein, will allow Buyer to complete the purchase of Property. The purchase price of Property to be paid by Buyer at closing is: **Six Hundred Fifty Thousand** U.S. Dollars ($ **650000**.00), and subject to all prorations and adjustments shall be paid by Buyer at the Closing by cash, wire transfer of immediately available funds, cashier's check or certified check.

3. **Closing and Possession:** This transaction shall be closed on the 30 day of **April**, 20 07, or on such other date as may be agreed to in writing by the parties by the law firm of **Perrie & Associates**. The Buyer agrees that the Seller will retain possession of the Property through: (Select A. or B. Below Section not checked shall not be a part of this agreement.)
   A. [X] Closing; or
   B. [ ] Until _____

4. **Earnest Money.**
   A. Receipt: Buyer has paid to **Advance Equity Group, Inc.** ("Holder") earnest money of $ **10,000** check, which has been received by Holder. In addition, Buyer has paid Seller the sum of $25.00, the receipt of which is hereby acknowledged by Seller, as option money for Seller for holding Property off the market during the Due Diligence Period. The earnest money shall be deposited in Holder's escrow/trust account (with Holder retaining the interest if the account is interest bearing) within five banking days from the Binding Agreement Date. If Buyer writes a check for earnest money and the same is deposited into Holder's escrow/trust account, Holder shall not be required to return the earnest money until the check has cleared the account on which the check was written. In the event any earnest money check is dishonored for any reason by the bank upon which it is drawn, Holder shall promptly give notice to Buyer and Seller. Buyer shall have three banking days after notice to deliver good funds to Holder. In the event Buyer does not timely deliver good funds, Seller shall have the right to terminate this Agreement upon written notice to Buyer.
   B. Entitlement to Earnest Money: Subject to the Disbursement of earnest money paragraph below:
      1. Buyer shall be entitled to the earnest money upon: a) failure of the parties to enter into a binding agreement; b) failure of any contingency or condition to which this Agreement is subject; c) termination of this Agreement due to the default of Seller; d) the termination of this Agreement in accordance with a specific right to terminate set forth in the Agreement; or, e) upon the closing of Property.
      2. Seller shall be entitled to the earnest money if this Agreement is terminated due to the default of Buyer. In such event, Holder may pay the earnest money to Seller by check, which if accepted and deposited by Seller, shall constitute liquidated damages in full settlement of all claims of Seller. It is agreed to by the parties that such liquidated damages are not a penalty and are a good faith estimate of Seller's actual damages, which damages are difficult to ascertain.
   C. Disbursement of Earnest Money: Holder shall disburse Earnest Money only as follows: a) at Closing; b) upon a subsequent written agreement signed by Buyer and Seller; c) as set forth below in the event of a dispute regarding earnest money; or, d) the failure of the parties to enter into a binding agreement (where there is no dispute over the formation or enforceability of the Agreement). No party shall seek damages from Holder, nor shall Holder be liable for any such damages, for any matter arising out of or related to the performance of Holder's duties hereunder.
   D. Disputes Regarding Earnest Money: In the event Buyer or Seller notifies Holder of a dispute regarding the disposition of Earnest Money that Holder cannot resolve, Holder shall settle the dispute as follows: [Select Section 1 or 2 below. The section not selected is not part of this Agreement.]
      [X] 1. Reasonable Interpretation by Holder. Holder may disburse the earnest money upon a reasonable interpretation of the Agreement, provided that Holder first gives all parties 15-days notice stating to whom and why the disbursement will be made. Any party may object to the proposed disbursement by giving written notice of the same to Holder within the 15-days notice period. Objections not timely made in writing shall be deemed waived. If Holder receives an objection and after considering it, decides to disburse the earnest money as originally proposed, Holder may do so and send notice to the parties of Holder's action. If Holder decides to modify its proposed disbursement, Holder shall first send a new 15-days notice to the parties stating the rationale for the modification and to whom the disbursement will now be made. If there is a dispute over the earnest money which the parties cannot resolve after a reasonable period of time, and where Holder has a bona fide question as to who is entitled to the earnest money, Broker may interplead the earnest money into a court of competent jurisdiction. Holder shall be reimbursed for and may deduct

Copyright© 2007 by Georgia Association of REALTORS®, Inc.       CF2, Commercial Purchase and Sale Agreement, Page 1 of 7  01/01/07

FROM : DEERFIELD DEV GROUP          FAX NO. :6782904824          Jan. 29 2008 03:48PM P3/8
Feb 28 07 12:54p    Joe DeMarco                          678-935-1354               p.2

from any funds interpleaded, its costs and expenses, including reasonable attorney's fees actually incurred. The prevailing defendant in the interpleader lawsuit shall be entitled to collect its attorney's fees and court costs and the amount deducted by Holder from the non-prevailing defendant.

## OR

☐ 2. **Arbitration.** Buyer and Seller agree that any earnest money dispute shall be settled by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association. Buyer and Seller agree to engage _____ or another arbitrator mutually agreeable to the parties ("Arbitrator"), to settle the earnest money dispute. The award of the Arbitrator shall be final and binding upon the parties hereto, and Holder shall promptly disburse the earnest money in accordance with said award. The costs of any such arbitration shall be shared equally between the Buyer and Seller and shall be promptly paid directly to the Arbitrator. Notwithstanding any provisions to the contrary contained herein, if the parties have not selected an Arbitrator above and cannot agree on an Arbitrator to resolve any dispute within 30 days from the beginning of the earnest money dispute, Holder shall have the right to interplead the earnest money in accordance with paragraph 3.D (1) above.

5. **Inspection.** Prior to closing, Buyer and Buyer's agents shall have the right to enter upon Property at Buyer's expense, and at reasonable times, to inspect, survey, examine, and test Property as Buyer may deem necessary as part of Buyer's acquisition of Property. Buyer shall indemnify and hold Seller and all Brokers harmless from and against any and all claims, injuries, and damages to persons and/or property arising out of or related to the exercise of Buyer's rights hereunder. Buyer shall have __45__ days from the Binding Agreement Date ("Due Diligence Period") to evaluate Property, the feasibility of the transaction, the availability and cost of financing, and any other matter of concern to Buyer. During the Due Diligence Period, Buyer shall have the right to terminate this Agreement upon notice to Seller if Buyer determines, based on an evaluation of the above, that it is not desirable to proceed with the transaction. In such event, Holder shall promptly refund Buyer's earnest money in accordance with the earnest money paragraph above. Within __·__ days from the Binding Agreement Date, Seller shall deliver to Buyer copies of the materials concerning Property referenced in Exhibit "B" (collectively, "Due Diligence Materials"), which materials shall be promptly returned by Buyer if this Agreement does not close for any reason. If Buyer fails to timely notify Seller that it is not proceeding with the transaction, Buyer shall waive its rights to terminate this Agreement pursuant to this paragraph.

6. **Title.**
   A. **Warranties of Seller:** Seller warrants that at Closing, Seller shall convey good and marketable, fee simple title to Property to Buyer, subject only to the following exceptions ("Permitted Exceptions"):
      1. Liens for ad valorem taxes not yet due and payable;
      2. Those exceptions to which Buyer does not object or which Buyer waives in accordance with the Title Objections paragraph below. "Good and marketable, fee simple title" with respect to Property shall be such title: a) as is classified as "marketable" under the Title Standards of the State Bar of Georgia; and, b) as is acceptable to and insurable by a title insurance company doing business in Georgia ("Title Company"), at standard rates on an American Land Title Association Owner's Policy ("Title Policy").
   B. **Title Objections:** Buyer shall have __60__ days from the Binding Agreement Date in which to furnish Seller with a written statement of any title objections, UCC-1 or UCC-2 Financing Statements, and encroachments and other facts affecting the marketability of Property as revealed by a current title examination and survey. Seller shall have __7__ days from the receipt of such objections (the "Title Cure Period") to cure all valid title objections. Seller shall satisfy any existing liens or monetary encumbrances identified by Buyer as title objections which may be satisfied by the payment of a sum certain prior to or at Closing. Except for Seller's obligations in the preceding sentence, if Seller fails to cure any other valid title objections of Buyer within the Title Cure Period (and fails to provide Buyer with evidence of Seller's cure satisfactory to Buyer and to the Title Company), then within five days of the expiration of the Title Cure Period, Buyer may, as Buyer's sole remedies: 1) rescind the transaction contemplated hereby, in which case, Buyer shall be entitled to the return of Buyer's earnest money; 2) waive any such objections and elect to close the transaction contemplated hereby irrespective of such title objections and without reduction of the Purchase Price; or, 3) extend the Closing Date for a period of time not to exceed fifteen days to allow Seller further time to cure such valid title objections. Failure to act in a timely manner under this paragraph shall constitute a waiver of Buyer's rights hereunder. Buyer shall have the right to re-examine title prior to Closing and notify Seller at Closing of any title objections which appear of record after the date of Buyer's initial title examination and before Closing.

7. **Seller's Obligations at Closing:** At Closing, Seller shall deliver to Buyer: a) a Closing Statement; b) Limited Warranty Deed; c) FIRPTA Affidavit (indicating that Seller is not a "foreign person" or "foreign corporation" as that term is defined in Section 1445(f)(3) of the Internal Revenue Code of 1986); d) an Affidavit of Seller's Residence Regarding Georgia Withholding Tax, establishing that Seller is exempt from the requirements of O.C.G.A. § 48-7-128, the Georgia Withholding Statute (or Affidavit of Exemption or Affidavit of Seller's Gain, if withholding is required); e) a transfer tax declaration form properly signed and executed by Seller; and, f) all documents which Seller must execute under the terms of this Agreement to cause the Title Company to deliver to Buyer the Title Policy, including, without limitation, a title affidavit from Seller to Buyer and to the Title Company in the form customarily used in Georgia commercial real estate transactions so as to enable the Title Company to issue Buyer the Title Policy with all standard exceptions deleted and subject only to the Permitted Exceptions and evidence reasonably satisfactory to Title Company of its due and proper authority and power to perform its obligations hereunder. In addition, Seller shall deliver to Buyer at Closing all documents/items indicated in Exhibit "C", if any. (All documents to be delivered by Seller under this paragraph, including all documents/items indicated in Exhibit "C" are collectively "Seller's Closing Documents".)

Copyright© 2007 by Georgia Association of REALTORS®, Inc.          CF2, Commercial Purchase and Sale Agreement, Page 2 of 7   01/01/07

B. **Conditions to Closing.**
   A. **Conditions in Favor of Buyer:** The obligation of Buyer to consummate the transaction contemplated herein is conditioned upon the following conditions precedent as of the Closing Date:
      1. All representations and warranties of Seller made herein shall remain true and correct;
      2. Seller shall have performed all of the covenants undertaken by Seller in this Agreement to be performed by Seller at or prior to Closing;
      3. Seller shall have delivered to the Buyer properly executed originals of Seller's Closing Documents;
      4. There shall have been no material adverse change in the physical condition of Property, except as otherwise provided for in this Agreement; and
      5. The issuance at Closing of the Title Policy (or marked binder), with all standard exceptions deleted and subject only to the Permitted Exceptions.
   B. **Conditions In Favor of Seller:** The obligation of Seller to consummate the transaction contemplated herein is conditioned upon the following conditions precedent as of the Closing Date:
      1. All representations and warranties of Buyer made herein shall remain true and correct;
      2. Buyer shall have performed all of the covenants undertaken by Buyer in this Agreement to be performed by Buyer at or prior to Closing; and
      3. Buyer shall have: a) delivered to the Seller properly executed originals of the transfer tax declaration form, title policy documents, closing statement, and any other documents identified in Exhibit "C" that require Buyer's signature; and , b) paid the Purchase Price, plus or minus prorations and adjustments, to Seller.

9. **Costs.**
   A. **Seller's Costs:** Seller shall pay the cost of recording any title curative document, including, without limitation, satisfactions of deeds to secure debt, quitclaim deeds and financing statement terminations; all transfer taxes; all deed recording fees; the fees of Seller's counsel.
   B. **Buyer's Costs:** Buyer shall pay the cost of Buyer's counsel and consultants; any costs in connection with Buyer's inspection of Property and any costs associated with obtaining financing for the acquisition of Property (including any intangibles tax, all deed recording fees and the cost of recording Buyer's loan documents).
   C. **Additional Costs:** In addition to the costs identified above, the following costs shall be paid by the parties hereto, as indicated below:

   | Item to be Paid | Paid by Seller | Paid by Buyer |
   |---|---|---|
   | Survey | ☒ | ☐ |
   | Title Examination | ☒ | ☐ |
   | Premium for Owner's Title Insurance Policy | ☐ | ☒ |
   | Other: _____ | ☐ | ☐ |

10. **Taxes and Prorations.** Real estate taxes on Property for the calendar year in which the Closing takes place shall be prorated as of 12:01 a.m. on the Closing Date. Seller shall be responsible (even after Closing) for paying all taxes (including previous reassessments) on Property for the time period during which Seller owned Property. In addition, the following items shall also be prorated as of 12:01 a.m. on the Closing Date [*Select only those items that apply to this transaction; the items not selected shall not apply to this Agreement*]:
    - ☐ Utilities
    - ☐ Rents
    - ☐ Service Contracts
    - ☐ Leasing Commissions
    - ☐ Tenant Improvement Costs
    - ☐ Other: _____

11. **Representations and Warranties.**
    A. **Seller's Representations and Warranties:** As of the Binding Agreement Date and the Closing Date, Seller makes the representations and warranties to Buyer, if any, as indicated in Exhibit "D", if attached.
    B. **Buyer's Representations and Warranties:** As of the Binding Agreement Date and the Closing Date, Buyer represents and warrants to Seller that Buyer has the right, power and authority to enter into this Agreement and to consummate the transaction contemplated by the terms and conditions of this Agreement; and the persons executing this Agreement on behalf of Buyer have been duly and validly authorized by Buyer to execute and deliver this Agreement and shall have the right, power and authority to enter into this Agreement and bind Buyer.

12. **Agency and Brokerage.**
    A. **Agency Disclosure:** In this Agreement, the term "Broker" shall mean a licensed Georgia real estate broker or brokerage firm and where the context would indicate, the broker's affiliated licensees. No Broker in this transaction shall owe any duty to Buyer or Seller greater than what is set forth in their brokerage engagements and the Brokerage Relationships in Real Estate Transactions Act, O.C.G.A. § 10-6A-1 et. seq.;
       1. **No Agency Relationship.** Buyer and Seller acknowledge that if they are not represented by a Broker, they are each solely responsible for protecting their own interests, and that Broker's role is limited to performing ministerial acts for that party.

2. **Seller's Broker.** Broker working with Seller is identified on the signature page as the "Seller's Broker"; and said Broker:
   ☒ is, OR, ☐ is NOT    representing Seller;
3. **Buyer's Broker.** Broker working with Buyer is identified on the signature page as "Buyer's Broker"; and said Broker:
   ☒ is, OR, ☐ is NOT representing Buyer;
4. **Dual Agency or Designated Agency.** If Buyer and Seller are both being represented by the same Broker, a relationship of either: ☐ designated agency, OR, ☐ dual agency shall exist.
   a. **Dual Agency Disclosure.** *[Applicable only if dual agency has been selected above.]* Buyer and Seller are aware that Broker is acting as a dual agent in this transaction and consent to the same. Buyer and Seller have been advised that:
      (1) In serving as a dual agent, Broker is representing two clients whose interests are or at times could be different or even adverse;
      (2) Broker will disclose all adverse, material facts relevant to the transaction and actually known to the dual agent to all parties in the transaction except for information made confidential by request or instructions from another client which is not otherwise required to be disclosed by law;
      (3) Buyer and Seller do not have to consent to dual agency and the consent of Buyer and Seller to dual agency has been given voluntarily and the parties have read and understood their brokerage engagement agreements;
      (4) Notwithstanding any provision to the contrary contained herein, Buyer and Seller each hereby direct Broker, while acting as a dual agent, to keep confidential and not reveal to the other party any information which could materially and adversely affect their negotiating position.
   b. **Designated Agency Assignment.** *[Applicable only if the designated agency has been selected above.]* Broker has assigned _____ to work exclusively with Buyer as Buyer's designated agent and _____ to work exclusively with Seller as Seller's designated agent. Each designated agent shall exclusively represent the party to whom each has been assigned as a client and shall not represent in this transaction the client assigned to the other designated agent.

B. **Brokerage:** Broker(s) identified herein have performed valuable brokerage services and are to be paid a Commission pursuant to a separate agreement or agreements. Unless otherwise provided for herein, Seller's Broker will be paid a Commission by the Seller, and the Buyer's Broker will receive a portion of Seller's Broker's commission pursuant to a cooperative brokerage agreement. The closing attorney is directed to pay the commission of Broker(s) at closing out of the proceeds of the sale. If the sale proceeds are insufficient to pay the full Commission, the party owing the Commission will pay any shortfall at closing. If more than one Broker is involved in the transaction, the closing attorney is directed to pay each Broker its respective portion of said Commission. In the event the sale is not closed because of Buyer's and/or Seller's failure or refusal to perform any of their obligations herein, the non-performing party shall immediately pay the Broker(s) the full Commission the Broker(s) would have received had the sale closed, and the Buyer's Broker and Seller's Broker may jointly or independently pursue the non-performing party for their portion of the Commission.

C. **Disclosure of Commission, Rebate, or Direct Profit:** Broker hereby discloses that Broker may receive a commission, rebate or direct profit for procuring a mortgage loan, insurance or other services on behalf of Buyer or Seller.

D. **Material Relationship Disclosure:** Broker and/or affiliated licensees have no material relationship with either Buyer or Seller except as follows: _____

13. **Disclaimer.**
Buyer and Seller acknowledge that they have not relied upon any advice, representations or statements of Brokers and waive and shall not assert any claims against Brokers involving the same. Buyer and Seller agree that Brokers shall not be responsible to advise Buyer and Seller on any matter including, but not limited to the following: any matter which could have been revealed through a survey, title search or inspection of Property; the condition of Property, any portion thereof, or any item therein; building products and construction techniques; the necessity or cost of any repairs to Property; mold; hazardous or toxic materials or substances; termites and other wood destroying organisms; the tax or legal consequences of this transaction; the availability and cost of utilities or community amenities; the appraised or future value of Property; any condition(s) existing off Property which may affect Property; the terms, conditions and availability of financing; and the uses and zoning of Property, whether permitted or proposed. Buyer and Seller acknowledge that Brokers are not experts with respect to the above matters and that if any of these matters or any other matters are of concern to them, they should seek independent expert advice relative thereto. Buyer and Seller acknowledge that Brokers shall not be responsible to monitor or supervise any portion of any construction or repairs to Property and that such asks clearly fall outside the scope of real estate brokerage services.

14. **Destruction of Property Prior to Closing.** If the Property is destroyed or substantially destroyed prior to Closing, Seller shall give Buyer prompt notice thereof, which notice shall include Seller's reasonable estimate of: 1) the cost to restore and repair the damage; 2) the amount of insurance proceeds, if any, available for the same; and, 3) whether the damage will be repaired prior to Closing. Upon notice to Seller, Buyer may terminate this Agreement within seven days of receiving such notice from Seller. If Buyer does not terminate this Agreement, Buyer shall be deemed to have accepted Property with the damage and shall receive at Closing 1) any insurance proceeds which have been paid to Seller but not yet spent to repair the damage, and, 2) an assignment of all unpaid insurance proceeds on the claim.

15. **Assignment. (Select one)**
   ☐ A. Buyer may not assign this Agreement to any legal entity without written permission from the Seller. Any such approved assignment shall not release the original Buyer from any liabilities or obligations herein. Notice of such assignment shall be

delivered to the Seller within two (2) working days of execution, but not less than five (5) days from closing.

☒ B. This Agreement may be assigned by the Buyer to any legal entity of which the Buyer owns at least 25% and must have written permission of the Seller to do so. Such permission shall not be unreasonably denied.

Any such assignment shall not release the original purchaser from any liabilities or obligations herein. Notice of such assignment shall be delivered to the Seller within two (2) working days of execution, but not less than five (5) days from closing. No other assignment may be made without written permission of the Seller.

16. **Other Provisions.**
   A. **Binding Effect, Entire Agreement, Modification:** This Agreement constitutes the sole and entire agreement between the parties and shall be binding upon the parties and their successors, heirs and permitted assigns. No representation, promise or inducement not included in this Agreement shall be binding upon any party hereto. This Agreement may not be amended, modified or waived, except by the written agreement of Buyer and Seller.
   B. **Survival of Agreement:** All conditions and stipulations in this Agreement which the parties agree shall be performed or fulfilled after the closing shall survive closing until such time as said conditions or stipulations are performed or fulfilled.
   C. **Governing Law:** This Agreement may be signed in multiple counterparts and shall be interpreted in accordance with the laws of the State of Georgia.
   D. **Time of Essence:** Time is of the essence of this Agreement.
   E. **Terminology:** As the context may require in this Agreement: (1) the singular shall mean the plural and vice versa; and (2) all pronouns shall mean and include the person, entity, firm, or corporation to which they relate.
   F. **Responsibility to Cooperate:** All parties agree to take all actions and do all things reasonably necessary to fulfill in good faith and in a timely manner the terms and conditions of this Agreement.
   G. **Notices:**
      1. **All Notices Must Be In Writing.** All notices, including, but not limited to, offers, counteroffers, acceptances, amendments, notices to terminate and demands, required or permitted hereunder shall be in writing, signed by the party giving the notice and delivered either: (a) in person; (b) by an overnight delivery service, prepaid; (c) by facsimile transmission (FAX); or (d) by the United States Postal Service, postage prepaid, registered or certified return receipt requested.

| Notice to Buyer | | Notice to Seller | |
|---|---|---|---|
| Name: | Joe DeMarco | Name: | |
| Address: | 4080 McGinnis Ferry Rd, Suite 1303 | Address: | |
| City: | Alpharetta | City: | |
| State: | GA  Zip 30005 | State: | Zip: |
| Fax No.: | 678-935-1354 | Fax No.: | 770-579-4560 |
| E-mail: | | E-Mail: | |

| Notice to Buyer's Broker | | Notice to Seller's Broker: | |
|---|---|---|---|
| Name: | Joe DeMarco | Name: | Gary Mills |
| Address: | 4080 McGinnis Ferry Rd, Suite 1303 | Address: | |
| City: | Alpharetta | City: | |
| State: | GA  Zip 30005 | State: | Zip: |
| Fax No: | 678-935-1354 | Fax No.: | 770-579-4560 |
| E-Mail: | | E-Mail: | |

      2. **When Notice to Broker Is Notice to Client.** Except in transactions where Broker is practicing designated agency, notice to Broker shall, for all purposes, be deemed to be notice to the party being represented by Broker as a client. In transactions where Broker is practicing designated agency, notice to the designated agent shall be deemed to be notice to the party being represented by the designated agent. Notice to Broker shall not be deemed to be notice to any party who is only a customer of Broker.
      3. **Faxed Notices.** All FAX notices shall be sent to their respective FAX numbers identified above. All FAX notices to an unrepresented Buyer or unrepresented Seller shall be sent to the number shown above. If no fax number is provided by an un-represented Buyer or Seller, that party shall not be contacted by FAX. Notice sent by FAX shall be deemed to be given and received as of the date and time it is transmitted, provided that the sending FAX produces a written confirmation showing the correct date and the time of the transmission and the telephone number referenced herein to which the notice should have been sent. Any notice sent by FAX shall be sent to such other FAX number as the receiving party may from time to time specify by notice to the party sending the FAX. Any party sending notice by FAX shall send an original copy of the notice if so requested by the other party. A faxed signature of a party shall constitute an original signature binding upon that party.
      4. **Notice by E-mail.** Notice sent by e-mail to a party may only be sent to the e-mail address of: 1) the party; or 2) the Broker or the Broker's agent representing the party in the transaction as a client. Notwithstanding the above, in a transaction where the Broker is practicing designated agency, notice sent by e-mail shall only be sent to the e-mail address of the party or the designated agent for the party.
      5. **FAX Number and E-mail Addresses.** Permitted notices by FAX or e-mail shall only be sent to the intended recipient at the recipient's e-mail address or FAX number, if any, provided for in the signature page herein (or to such other FAX number or e-mail address as that person may designate in a later notice).

6.  **Certain Signatures Deemed Originals.** A facsimile signature shall be deemed to be an original signature for all purposes herein. An e-mail signature of a party shall be deemed to be an original signature of the party if it constitutes a "secure electronic signature" under Georgia law.
7.  **Miscellaneous.** Except as may be provided herein, notices shall be deemed to be given as of the date and time they are received. The notice requirements referenced herein shall be strictly construed.

H.  **Binding Agreement Date:** The Binding Agreement Date shall be the date when the party making the last Offer receives notice that the Offer has been accepted. This party (or the Broker representing this party) shall fill in the Binding Agreement Date below and promptly give notice of this date to the other party.

I.  **Remedies:** In the event of a breach of this Agreement, the non-breaching party may pursue all remedies available at law or in equity, except where the parties have agreed to arbitrate. Notwithstanding the above, if Buyer breaches Buyer's obligations or warranties herein, Seller shall have the option to request that Holder pay the Earnest Money to Seller, which if disbursed to Seller by Holder shall constitute liquidated damages in full settlement of all claims by Seller. Such liquidated damages are agreed to by the parties not to be a penalty and to be a good faith estimate of Seller's actual damages, which damages are difficult to ascertain.

17. **Exhibits and Addenda.** All exhibits and/or addenda attached hereto, listed below, or referenced herein are made a part of this Agreement. If any such exhibit or addendum conflicts with any preceding paragraph, said exhibit or addendum shall control:
    - [ ] Exhibit "A" Legal Description
    - [ ] Exhibit "B" Due Diligence Materials
    - [ ] Exhibit "C" Addition to Seller's Closing Documents
    - [ ] Exhibit "D" Seller's Warranties and Representations
    - [ ] Exhibit _____
    - [ ] Survey Resolution Exhibit Form SS221

18. **GAR Forms:** This GAR form is provided as a courtesy to the parties hereto. It is not required to be used in any transaction, may not be fit for the specific purposes of the parties or afford them any particular level of legal protection. The GAR forms may not be altered, copied or changed, in whole or in part, without the prior written permission of GAR.

**Special Stipulations.** The following Special Stipulations, if conflicting with any exhibit or preceding paragraph, shall control:

1) Within 15 days from the Binding Agreement Date seller shall provide the properties full legal description.

2) Within 15 days from the Binding Agreement Date seller shall provide buyer a survey of the property prepared on or before January 01, 2006.

3) Buyer shall have the right to inspect all documents in the possession of seller relating to properties operations while owned by the previous owner.

4) In addition to the commission due Buyer's Broker, Seller shall pay $5,000 to Advance Equity Group, Inc. (AEG) which AEG shall pay to a referring real estate agent.

5) Seller shall be responsible for obtaining any city and or county zoning or other approvals necessary to convert the property to condominiums. If such approvals are not obtained by the Closing Date buyer shall have the option to extend the Closing Date as necessary.

☐ Mark box if additional Special Stipulations are attached.

**Time Limit:** The terms of this Agreement shall constitute an offer ("Offer") which shall be open for acceptance until __7__ o'clock _p_ m. on the __2__ day of __March__, 20_07_.

**ADVANCE EQUITY GROUP, INC.**
Buyer's Broker

Buyer's Signature

**AEGI01**     **H-54909**
MLS Office Code     Brokerage Firm License Number

W. Curtis Mills, Jr.
Print or Type Name

Broker's Phone# __678-362-9122__ & FAX# __678-935-1354__

Buyer's Signature

By: _____
Broker or Brokers Affiliated Licensee

Print or Type Name

**JOE DEMARCO**
Print or Type Name

__292968__
Buyer's Agent's Georgia Real Estate License Number

Multiple Listing Number _____

**Metro Brokers GMAC**
Seller's Broker

Seller's Signature

MLS Office Code     Brokerage Firm License Number

Print or Type Name

Broker's Phone# __404-290-5700__ & FAX# __770-579-4560__

Seller's Signature

By: _____
Broker or Brokers Affiliated Licensee

**Gary Mills**
Print or Type Name

**Gary Mills**
Print or Type Name

Seller's Agent's Georgia Real Estate License Number

**Acceptance:** This Offer is hereby accepted, without change, at _____ o'clock _a_ m. on the _____ day of _____, 20____.

**Binding Agreement Date:** The Binding Agreement Date shall be the date when the party making the last Offer receives notice that the Offer has been accepted. This party (or the Broker representing this party) shall fill in the Binding Agreement Date and promptly give notice of this date to the other party. The Binding Agreement Date in this transaction is the _____ day of _____, 20____ and has been filled in by _____.

Copyright© 2007 by Georgia Association of REALTORS®, Inc.    CF2, Commercial Purchase and Sale Agreement, Page 7 of 7  01/01/07

FROM : DEERFIELD DEV GROUP          FAX NO. :6782904824          Jan. 27 2008 03:23PM  P2
Mar 29 07 10:15p     Joe DeMarco                                 678-935-1354        p.1

## RIDER 1

This Rider 1 to that certain Purchase and Sale Agreement dated the 27th day of February, 2007 ("Agreement") for the purchase and sale of real property located at 15 Oxbo Road, Roswell, Georgia 30075 is entered into between the parties as of the 29 day of March, 2007. All items and conditions of the Agreement, as modified by this Rider, are agreed to and accepted by the undersigned.

1. Buyer acknowledges that Seller is acting solely in its capacity as Receiver for the record owner of the Property, pursuant to court order from the U.S. District Court for the Northern District of Georgia (the "Court"). In addition to other contingencies set forth in this Agreement, Seller's obligations under this Agreement are contingent upon obtaining all necessary and required approvals of the transactions expressed in this Agreement from the Court. Seller's obligations under this Contract shall be further subject to any conditions, qualifications or restrictions which the Court may impose. In the event Seller has not obtained Court approval prior to the Closing, Seller may unilaterally extend Closing, at its option, for up to sixty (60) days in order to obtain such approvals. In the event the Court has not granted its approval, prior to the extended Closing Date, Seller shall instruct Holder to return the Deposit to Buyer within five (5) banking days, and this Agreement shall be deemed terminated without either party having any further liability to the other, unless otherwise agreed to by the parties.

2. Buyer represents and warrants that neither it nor any of its employees, officers, directors, principals, managers, members or affiliates: (a) is a creditor, an equity security holder, or an insider of Seller, Pinnacle Development Partners ("Pinnacle"), or any of Pinnacle's affiliates (collectively, Seller, Pinnacle and Pinnacle's affiliates are defined as the "Interested Parties"); (b) is not currently, nor has been within the previous two (2) years, a director, officer, principal, member, manager or employee of any of the Interested Parties; and (c) has any contractual relationship with any of the Interested Parties, other than arising from this Agreement. The representations and warranties contained in this Section 2 shall be reaffirmed by Buyer at Closing and shall survive Closing.

3. Section 2 of the Agreement is modified to read that the Purchase Price of the Property shall be $700,000.00.

4. Section 3 of the Agreement is modified to read that the transaction contemplated by the Agreement shall be closed by the law firm of McClarty, Robinson & VanVoorhies, LLP or such other firm as mutually agreed between the parties.

5. The first sentence of Section 4.A. of the Agreement is modified to delete "Advance Equity Group, Inc." and substitute in lieu thereof "Hays Consulting".

6. The second sentence of Section 4.A. of the Agreement is hereby deleted in its entirety.

7. The third sentence of Section 5 of the Agreement is deleted in its entirety and substituted in lieu thereof shall be the following: "Buyer shall have thirty (30) days from the Binding

1774860_1.doc

Agreement Date ("Due Diligence Period") to evaluate the Property, the feasibility of the transaction, the availability and cost of financing, and any other matter of concern to Buyer."

8. All inspections performed by Buyer of the Property shall be nondestructive in nature, and specifically shall not include any physically intrusive testing.

9. Subsection 7(f) of the Agreement is hereby deleted in its entirety and substituted in lieu thereof shall be the following: "all documents which Seller must execute under the terms of this Agreement to cause the Title Company to deliver to Buyer the Title Policy, including, without limitation, a title affidavit from Seller to the Title Company in a form sufficient to delete the standard exceptions from a Title Policy and subject only to the Permitted Exceptions, and evidence reasonably satisfactory to the Title Company of its due and proper authority and power to perform its obligations hereunder."

10. Sections 9.A. of the Agreement is deleted in its entirety and substituted in lieu thereof shall be the following: "A. Seller's Costs: Seller shall pay the cost of recording any title curative document, including, without limitation, satisfactions of deeds to secure debt, release deeds and financing terminations, and the fees of Seller's counsel."

11. Section 9.B. of the Agreement is deleted in its entirety and substituted in lieu thereof shall be the following: "B. Buyer's Costs: Buyer shall pay the cost of Buyer's counsel and consultants, any costs in connection with Buyer's inspection of Property, all transfer taxes and deed recording fees, and any costs associated with obtaining financing for the acquisition of the Property (including any intangible tax, all deed recording fees and the cost of recording Buyer's loan documents)."

12. Section 9.C. of the Agreement hereby modified to read that Buyer shall pay the costs of the Survey, Title Examination, and the Premium of an Owner's Title Insurance Policy.

13. Section 16.G. of the Agreement is hereby modified to read that any notice to be given to either party may be delivered (i) in person, (ii) by an overnight delivery service, prepaid, or (iii) by registered or certified U.S. mail, pre-paid, return receipt requested. Notice via email or fax shall not be sufficient for purposes of providing any notice under the Agreement.

14. Special Stipulation 5 is hereby deleted in its entirety and substituted in lieu thereof shall be the following "Buyer shall use commercially reasonable efforts to cause the Property to be finally rezoned by the appropriate county and/or city authorities having jurisdiction thereover (collectively, the "Authority") from its present classification to the zoning classification which will permit the use of the Property as condominiums (the "Rezoning"). All costs of the Rezoning of the Property, including any costs, fees, expenses and attorneys' fees of Buyer, shall be borne by Buyer. In the event the Rezoning is not final on or before the Closing Date set forth in Paragraph 3 of the Agreement, then Buyer shall have the option to extend the Closing Date for a period of sixty (60) days in order to secure the Rezoning. If the Rezoning of the Property is not

1774860_1.doc

final on or before five (5) days prior to the Closing Date, as extended, Buyer shall have the right to terminate this Agreement by written notice to Sellers, whereupon the Earnest Money, if any, less $100.00 to be paid to Seller, shall be returned to Buyer."

15. Buyer acknowledges and agrees that except for the warranties and representations contained in the Agreement and in the closing documents delivered by Seller to Buyer at Closing, upon Closing, Seller shall sell and convey to Buyer and Buyer shall accept the Property **AS IS, WHERE IS, and WITH ALL FAULTS**.

16. Special Stipulation 1 is hereby deleted in its entirety, as a legal description of the Property is attached hereto as Exhibit "A" and incorporated herein by reference.

17. Special Stipulation 2 to the Agreement is hereby deleted in its entirety and substituted in lieu thereof shall be the following: "Within 15 days from the Binding Agreement date Seller shall deliver to Buyer any existing surveys of the Property which are in Seller's possession."

18. Special Stipulation 4 is hereby deleted in its entirety.

BUYER:

*[signature]*

SELLER:

*[signature]*
S. Gregory Hays, Receiver for Pinnacle
Development Partners, LLC

1774860_1.doc

**Time Limit:** The terms of this Agreement shall constitute an offer ("Offer") which shall be open for acceptance until __7__ o'clock __p__. m. on the __2__ day of __March__, 20__07__.

**ADVANCE EQUITY GROUP, INC.**
Buyer's Broker

Buyer's Signature

AEGI01    H-54909
MLS Office Code    Brokerage Firm License Number

W. Curtis Mills, Jr.
Print or Type Name

Broker's Phone# 678-362-9122 & FAX# 678-935-1354

By: _____
Broker or Brokers Affiliated Licensee

Buyer's Signature

JOE DEMARCO
Print or Type Name

Print or Type Name

292958
Buyer's Agent's Georgia Real Estate License Number

Multiple Listing Number _____

**Metro Brokers GMAC**
Seller's Broker

Seller's Signature

MLS Office Code    Brokerage Firm License Number

Print or Type Name

Broker's Phone# 404-290-5700 & FAX# 770-579-4580

Seller's Signature

By: _____
Broker or Brokers Affiliated Licensee

Gary Mills
Print or Type Name

Gary Mills
Print or Type Name

Seller's Agent's Georgia Real Estate License Number

**Acceptance:** This Offer is hereby accepted, without change, at __8:32__ o'clock __p__. m. on the __29__ day of __March__, 20 __07__.

**Binding Agreement Date:** The Binding Agreement Date shall be the date when the party making the last Offer receives notice that the Offer has been accepted. This party (or the Broker representing this party) shall fill in the Binding Agreement Date and promptly give notice of this date to the other party. The Binding Agreement Date in this transaction is the __29__ day of __March__, 20 __07__ and has been filled in by __W. Curtis Mills, Jr.__

Copyright® 2007 by Georgia Association of REALTORS®, Inc.          CP2, Commercial Purchase and Sale Agreement, Page 7 of 7 01/01/07

EXHIBIT "A"

LEGAL DESCRIPTION OF THE PROPERTY

1774860_2.doc

EXHIBIT "A"

All that tract or parcel of land lying and being in Land Lot 415 of the First District and Second Section of formerly Cobb, now Fulton County, Georgia and being more particularly described as follows:

BEGINNING at a point marked by an iron pin on the southwesterly line of the right-of-way of Oxbo Road at the intersection thereof with the west line of Land Lot 415; and running thence south along the west line of Land Lot 415 for a distance of one hundred fifty (150) feet to the center line of Old Grimes Bridge Road (abandoned); and running thence southeasterly along the center line of the abandoned Old Grimes Bridge Road for a distance of two hundred (200) feet to an iron pin; and running thence northerly for a distance of one hundred twenty three and two-tenths (123.2) feet to an iron pin on the southwesterly line of the right-of-way of Oxbo Road; and running thence northwesterly along the southwesterly right-of-way line of Oxbo Road for a distance of two hundred (200) feet to the iron pin at the point of beginning being the same property conveyed to Marion E. King by deed recorded in Deed Book 65, Page 232, Cobb County Records, and being the same property described in the Warranty Deed from Mrs. Irene O. Little (Mrs. W.Y. Smith) to L.G. Otwell, dated August 9, 1941, and recorded in Deed Book 1864, page 218, Fulton County Records, and being the same property conveyed by Warranty Deed from J.J. Cochran to James L. Woolard, dated May 27, 1964, filed May 28, 1964, and recorded in Deed Book 4242, page 382, Fulton County, Georgia records.

TC   0000070

## FIRST AMENDMENT TO COMMERCIAL PURCHASE AND SALE AGREEMENT

THIS FIRST AMENDMENT TO COMMERCIAL PURCHASE AND SALE AGREEMENT (this "Amendment") is made as of the 30 day of May, 2007, by and between **PINNACLE DEVELOPMENT PARTNERS, L.L.C.**, a Georgia limited liability company ("Seller") and **W. CURTIS MILLS, JR.** an individual resident of the State of Georgia ("Buyer").

### WITNESSETH:

WHEREAS, Seller and Buyer entered into that certain Commercial Purchase and Sale Agreement, with an effective date of March 29, 2007 (the "Agreement"); and

WHEREAS, Seller and Buyer desire to enter into this Amendment for the purpose of extending the Inspection Period, and for other matters as hereinafter set forth.

NOW, THEREFORE, in consideration of the mutual covenants and agreements set forth in this Amendment, and in consideration of Ten Dollars ($10.00) and other good and valuable consideration in hand paid by each party hereto to the other, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound hereby, Seller and Buyer hereby covenant and agree as follows:

1.  **Definitions.** All capitalized terms not otherwise defined or modified herein shall have the meanings ascribed thereto in the Agreement.

2.  **Extension of Due Diligence Period.** Seller and Buyer hereby agree that notwithstanding anything contained in the Agreement to the contrary, the Due Diligence Period shall expire on June ~~11~~ 18, 2007.

3.  **Title and Survey Objections.** The first sentence of Section 6.B. of the Agreement is hereby deleted in its entirety and substituted in lieu thereof shall be the following:

    "Buyer shall have until 5:00 P.M., June ~~11~~ 18, 2007, in which to furnish Seller with a written statement of any title objections, UCC-1 Financing Statements, and encroachments and other facts affecting the marketability of Property as revealed by a current title examination and survey."

4.  **Closing Date.** Seller and Buyer hereby agree that notwithstanding anything contained in the Agreement to the contrary, the Closing shall occur on or before July ~~16~~ 31, 2007, as may be extended as provided in Section 1 of Rider 1 attached to Agreement.

5.  **Rezoning of the Property.** Section 14 of Rider 1 attached to the Agreement regarding the rezoning of the Property is hereby deleted in its entirety and of no further force or effect.

6. **Ratification.** Except as expressly modified or amended by this Amendment, all of the terms, covenants and conditions of the Agreement are hereby ratified and confirmed.

7. **Modification to Agreement.** Except insofar as reference to the contrary is made in any such instrument, all references to the "Agreement" in any future correspondence or notice shall be deemed to refer to the Agreement as modified by this Amendment.

8. **Counterparts.** This Amendment may be signed in any number of counterparts, including counterparts transmitted by facsimile or by e-mail as a .PDF file, each of which shall be deemed to be an original. When counterparts have been executed by all parties, they shall have the same effect as if the signatures to each counterpart or copy were upon the same documents, and facsimile or .PDF counterparts shall be deemed valid as originals.

9. **Governing Law.** This Amendment shall be governed by and construed in accordance with the laws of the State of Georgia.

IN WITNESS WHEREOF, the Seller and Buyer have executed and delivered this Amendment as of the date first above written.

SELLER: _____
S. Gregory Hays, Receiver for Pinnacle
Development Partners, L.L.C.

BUYER: _____
W. Curtis Mills, Jr.